## No. 11,196.

### TIMOTHY BYRNE VS. PARISH OF EAST CARROLL.

The condition of the contract was that the contractor would be paid from a special fund, if voted on favorably by the voters at a special election.

The contractor can not recover judgment against the defendant parish and ignore the means agreed upon to secure his payment.

The special election was ordered and held in contravention of a prohibitory law, and was null and void.

A *municipal* corporation can not be estopped from pleading and showing that certain acts were not within the scope of its authority.

The doctrine of estoppel in its application to municipal corporations is subject to restrictions and qualifications.

The question being one of original power to hold a special election, and not one relating to the compilation of the votes and declaring the result, is not one exclusively within the discretion of the police jury. It is subject to judicial inquiry and decision.

APPEAL from the Seventh District Court, Parish of East Carroll. *Wyly, Judge ad hoc.*

---

*Robert Whetstone* for Plaintiff and Appellant.

*Jos. E. Ransdell* for Defendant and Appellee.

The opinion of the court was delivered by

BREAUX, J.    Plaintiff, on the 3d day of December 1880, entered into a contract with the Police Jury of the parish of East Carroll to build an embankment known as the "Airlie protection levee," in that parish, as laid out by the engineer of the State.

He was to receive as compensation for the work 11 cents per cubic yard from the parish, and as much from the State.    The State authorities paid the amount they agreed to pay.

The defendant, by the terms of the contract, made the payment of 11 cents per cubic yard depend upon a proposed tax of 10 mills on the dollar, to be voted upon by the tax-payers on the 5th day of January, 1881.

An election was held at the time.

The defendant paid the sum of $1615.57 on account.    The plaintiff sues to recover the balance of $4485.51.

A petition signed by fourteen tax-payers of the parish, dated November 14, 1880, was presented to the police jury on the 2d day of December, 1880, asking that they order a special election to raise funds "for the payment of expense of building levees."

All the witnesses testify that it was the petition upon which the police jury acted in calling the election to vote upon a special tax on January 5, 1881.

The ordinance calling the special election is dated the 2d day of December, 1880.

The day after its adoption by the police jury that body contracted with the plaintiff to build the "Airlie protection levee."    The contract contains the following stipulation: "It is understood that the payment of said 11 cents per cubic yard is dependent upon the proposed tax of 10 mills on the dollar, to be voted on for levee purposes on the 5th day of January, 1881.    If voted on favorably the police jury will proceed to have the proceeds collected for the purpose herein named, to-wit, the payment of the contract and other levee expenses, and the said T. Byrne, contractor, party of the second part, hereby accepts the foregoing contract with all its provisions."

The election was held on the 5th of January, 1881.    At the election 289 tax-payers voted for the tax and 10 against.

The amount they represented as owners of property is not proven. The amount of the total assessment of the property of the parish at the time is not shown.

The evidence discloses that there were then 800 property tax-payers in the parish. After the election an ordinance was adopted directing the assessor to extend statements of the tax upon the assessment roll as required, and ordering the tax collector to collect the tax. The amount of $1642.51 had been collected and paid to plaintiff, when the police jury adopted an ordinance declaring the tax illegal, and instructing the sheriff not to collect the tax.

The plaintiff in his petition "prays that the said police jury, through its president, be cited to answer hereto, and that on trial he recover judgment for said sum."

The defendant denies all of plaintiff's allegations, and avers that the ordinance authorizing the contract did not provide the means of paying the debt contracted, and that the provisions in regard to the levy of a special tax were unconstitutional, null and void.

The judgment dismisses the suit. Plaintiff appeals.

Plaintiff does not sue to have the ordinance setting aside the prior proceeding rescinded, and to be restored to any rights under the repealed ordinances.

He alleges that the police jury has made these repeals, and claims an unconditional judgment.

If an error has been committed, he argues that the defendants should not be benefited by it, and that he should not be subjected to the loss of an amount to which he is entitled.

The plaintiff chose to make the payment dependent upon the proposed tax of 10 mills, and the special election of 5th of January, 1881.

The terms of the contract are positive and sufficiently clear.

Dealing with a municipal corporation, whose funds are purposely held separate to meet appropriations and current annual expenses, courts are without authority to reform the contract, change its terms and to direct that the creditor shall be paid out of other funds than those provided at the formation of the contract. Municipal corporations have no power to contract any debt or pecuniary liability without providing the means of payment. R. S. 2448.

The ordinance creating the debt should provide the means of paying the principal and interest. Wilson vs. City of Shreveport.

The pertinent question is whom did the creditor trust?

He knew the capacity of those with whom he contracted and looked to a special fund for payment. Trastour vs. Fallow, 12 An. 29.

The decision referred to by plaintiff from Oubre vs. Donaldsonville, 33 An. 390, did not support his contention.   The town in that case was held bound in bonds to the extent of *the provisions made for the payment of the same.*

This is the only point decided, and which has entered into the body of precedents.

In Cole, Executor, vs. City, 41 An. 845, it is stated that a different conclusion has been reached than that reached in that case, when the "rule has been applied to cases in which the contract expressly and in terms stipulated that the contractor agreed to restrict his right of payment to resources or revenues provided for in the contract."

Plaintiff's claim, by special agreement, *was to be paid out of a special fund,* and comes within the rule referred to in that case.

The decisions of the Supreme Court of the United States support a similar conclusion: "A mandamus will not lie to compel the levy of taxes *beyond the amount so authorized,*" and after the payment of the special fund the creditor did not have "*an increased right* to a levy of taxes.   United States vs. County of Macon, 99 U. S. 591.   (Italics ours.)

Courts can only bring existing powers into operation.   Supervisors vs. United States, 18 Wall. 81; see also Dillon on Municipal Corporations, Sec. 413, 2d Edition.

The plaintiff, if he can recover at all, is without right to recover an absolute judgment against the parish.   His claim is subject to the limitation he has himself placed upon it, to be paid from the "ten-mill levee tax," which was submitted to a vote at a special election.

The conclusion just reached brings us to the second issue involved, that relating to a "special fund," the right to which is disputed by the defendant on the ground of the unconstitutionality and illegality of the proceedings.

At the time the election was held, January 5, 1881, no legislative act had been adopted as an enabling act to Art. 209 of the Constitution.

This court held in Surget vs. Chase, Tax Collector, 33 An. 842, that the Art. 209 is not self-acting, and said that the proposition that it is self-operating and confers upon the parishes the absolute power

to levy unlimited taxes, upon the vote of a mere numerical majority of the tax-payers, without reference to the value of the assessable property of the parish, is startling.

The election, the legality of which is assailed in this case, was held under Act 84 of 1880, (since repealed) the enabling act, to Art. 242 of the Constitution, which article entrusts the General Assembly with the power of enacting general laws; authorizes the parishes to levy special taxes in aid of public improvements, on a vote of a majority of the property tax-payers in numbers and value; provided, the tax does not exceed five (5) mills per annum, nor extend for a longer period than ten years.

The act of 1880 empowered the police jury to order a special election and submit the rate of taxation to a vote of the property tax-payers, whenever one-third of the property tax-payers petitioned for the purpose.

In reference to the special election a majority of the property tax-payers, in number and in value, was required in order that it might be legally carried in favor of the tax.    Sec. 3 of Act 84 of 1880.

The illegalities of this special election disclosed by the record are:

1.   That the signers of the petition were less in number than one-third of the property tax-payers of the parish; also it is not proven that the number of votes cast represented a majority of the property tax-payers in number and in value.

In reference to the number who signed the petition:

It appears on the face of the papers that the law with reference to election, has not been followed.

The assessed value of the property in East Carroll not having been proven, it can not be said by reference to the record, that, the election was carried by a majority of the property tax-payers in number and value.

2. The purpose in submitting the tax to a vote was not stated in the ordinance to hold the special election.

That part of the ordinance reads: " That the following ordinance levying a special levee tax of 10 mills on the assessment roll of 1880 be and is submitted to a vote of the property tax-payers."

"A special levee tax of 10 mills," is hardly a statement of the purpose of the police jury in submitting the ordinance to a vote of the

property tax-payers, if that purpose was to provide a fund for build-ing a protection levee.

It can not be determined, with any certainty, whether it was a public levee forming part of the State system, and not a levee left to the police juries to devise means to build, under Act 188 of 1880.

3. The vote of the special tax was in excess of the constitutional limitation.

Article 242, the only article operative at the time upon the sub-ject, is mandatory and is a prohibitive limitation against the imposi-tion of a tax, of more than 5 mills per annum.

The plaintiff signed the contract after these proceedings of the police jury had been completed.

The plaintiff pleaded specially that the defendant having paid for part of the work is estopped from defending on the ground of ille-gality in the matter of the special election held, and he also argues that as the police jury had the authority to submit the matter to the voters and declare the result, the courts are without jurisdiction of the question.    He relies in support of the last proposition upon the case of Davis, M yor. vs. Police Jury of Bossier, 43 An. 7009.

Though the illegalities disclosed by the record are not all in con-travention of prohibitory laws, it is not possible, by the most liberal construction, to conclude that none of them contravene laws pro-hibitive in terms.

The acts done in contravention of prohibitory laws are null, and an ordinance conflicting with the Constitution is void.

The unauthorized contracts of a municipal corporation are void, and they may successfully plead *ultra vires*.

They are not estopped from pleading that a contract is *ultra vires*.

Mr. Dillon forcibly says: "The general principle of law is settled beyond controversy that the agents, officers, or even city council of a municipal corporation can not bind the corporation by any con-tract which is beyond the scope of its powers.  *  *  *  The oppo-site doctrine would be fraught with such danger, and accompanied with such abuse, that it would soon end in the ruin of municipalities, or be legislatively overthrown.  These considerations indicate both the reasonableness and necessity of the rule that the corporation is bound only when its agents or officers, by whom alone it can act, if

it acts at all, keep within the limits of the chartered authority of the corporation.

"The history of the workings of municipal bodies has demon-strated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard." Secs. 281, 382, 749.

We are concerned only with the doctrine of *ultra vires* as applied to municipal corporations, which differs greatly from the doctrine as applied to private corporations. La. State Bank vs. Orleans Nav. Co., 3 An. 314.

Any party contracting with a municipal corporation must take notice of any want of authority which the public records would show. Cooley on Constitutional Limitations, Sec. 196; Dillon, Sec. 55; March vs. Fulton Co. 10 Wall. 683.

The plea urged to the jurisdiction of the court can not be maintained, for the issue is not one arising from an election.

There is no question as to the mode adopted in holding the election, of unfairness in voting, or incorrectness of the returns.

It is a matter of original power, and of failure to observe the restrictions and limitations imposed, presenting legal questions within our jurisdiction.

The judgment is therefore affirmed at appellant's costs.