(82 South. 732)

'No. 23336.

BANK OF ORLEANS et al. v. BOARD OF COM'RS OF FOURTH JEFFERSON DRAINAGE DIST.

(June 2, 1919. Rehearing Denied June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. LIMITATION OF ACTIONS ⚖══118(2) — PRESCRIPTION — SUIT AGAINST DRAINAGE COMMISSIONERS—COMMENCEMENT OF ACTION.

Act No. 267 of 1914, § 27, providing that in all suits against corporations all prescriptions against corporations shall be interrupted by the filing of the suit in the court having jurisdiction, filing of the petition in a suit against drainage district commissioners on the sixtieth day after the first publication of the resolution of the commission was sufficient to comply with Sixty-Day Prescription Act, § 13, amending prior acts, though citation was not served until the sixty-first day.

2. DRAINS ⚖══15—PROCEEDINGS—ENLARGING TERRITORY—CONSENT OF OWNERS.

Under Const. art. 281, Act No. 317 of 1910, and Act No. 219 of 1912, proceedings of a drainage district board, enlarging on their own initiative a subdrainage district without the consent or notice of landowners, are contrary to law, and will be set aside in an action by the owners of a majority of the acreage in the district against such drainage board.

3. CONSTITUTIONAL LAW ⚖══290(1)—DUE PROCESS — DRAINAGE PROCEEDINGS — ASSESSMENTS.

Proceedings of a drainage district board fixing a uniform acreage tax on all lands, whether drained by gravity or by levees and pumps, contrary to Const. art. 281, providing different methods of draining high and low lands, and to the report of the engineer, and against the protest of the majority of property owners, are arbitrary and illegal, and constitute the taking of property without due process of law, and will be set aside.

145 LA.—21

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; John E. Fleury, Judge.

Action by the Bank of Orleans, tutor, and others, against the Board of Commissioners of the Fourth Jefferson Drainage District. Judgment for defendants, and plaintiffs appeal. Judgment reversed, and judgment rendered for plaintiff.

C. A. Buchler, of Gretna, and Borah, Himel, Bloch & Borah, of Franklin, for appellants.

Charles J. Larkin, Jr., E. M. Stafford, and H. W. Robinson, all of New Orleans, for appellees.

SOMMERVILLE, J. Plaintiffs, owners of a majority in acreage of the property situated within the limits of the proposed subdrainage district No. 5 of the Fourth Jefferson drainage district, alleged that the proceeding of the Fourth Jefferson drainage district commission creating subdivision No. 5, and imposing acreage taxes on the lands thereof, amounting to $19.30 per acre, and providing for the issuance of $295,000 in bonds to meet the expense of draining the same, are unconstitutional, illegal, irregular, arbitrary, null, and void, and they ask that all of the proceedings of the commission be so declared. At the time that this proceeding was instituted no taxes had been collected or bonds issued, no debt had been incurred by the drainage commission, no obligations had been entered into, and third persons are not in any manner interested in this litigation.

Defendants answered, and in their answer pleaded, as a peremptory exception and as a bar to the demands of plaintiffs, that 60 days had elapsed from the time of the promulgation of the proceeding set forth in the resolution of the defendant commission, and that those proceedings had become incontestable under the law, before the filing of and service of citation in plaintiffs' suit.

The pleas of prescription to and in bar of plaintiffs' right to sue are based upon section 13 of Act 227 of 1914, p. 424, which amends section 28 of Act 317 of 1910, p. 542, as amended by Act 219 of 1912, p. 493, and which reads in part as follows:

"Sec. 28. Be it further enacted, etc., that whenever a debt has been incurred and bonds ordered to be issued and a forced contribution, or acreage tax, levied as provided for in previous sections, any landowner having property situated within the limits of the area proposed to be drained, shall have the right during sixty days next following the date of the publication of the resolution required by the preceding sections, to appeal to the courts, for the purpose of testing the validity of such proceedings, after which time the validity of the proceedings, of the bonds authorized to be issued and the tax to be levied, or authorized to be levied, shall be absolutely incontestable for any cause whatever, and no court shall have jurisdiction to hear or determine any such cause. After which time the bonds shall be registered by the secretary of state without charge, as provided for bonds under section 31, Act 256 of 1910, as amended by Act 218 of 1912."

[1] The plea of prescription was referred to the trial of the case on its merits, and after hearing the case and arguments, the district judge maintained the plea of prescription, and dismissed plaintiffs' suit. At the same time, in his reasons for judgment, the judge referred to the merits of the case and found the proceedings of the board to have been legal.

The record discloses that the proceedings of the drainage commission were published for the first time on December 22, and for the second time on December 29, 1917. The petition in the suit was filed February 20, 1918, and citation was served on February 21, 1918, the sixty-first day after the first publication of the resolution of the commission. In computing the delay from the time of the publication of the resolution the day of publication is not counted, and the 60-day limit, if counted from the first publication, expired on the day that the petition in this suit was filed, February 20th, and this was in time, although the citation was not served until the sixty-first day. The law with reference to suits against corporations provides, in section 27 of Act 267 of 1914, p. 534:

"That in all suits against corporations, whether foreign or domestic, all prescriptions against corporations shall be interrupted by the filing of the suit in the court having jurisdiction of the action against the corporation."

It is not necessary that citations to corporations should be served within the prescriptible period to interrupt the running of the prescription. The plea of prescription should have been overruled.

Besides, the charges in the petition in this case are such as to take it from under the law of prescription invoked by defendant.

[2, 3] The drainage of land in the southern part of the state has been the source of much legislation since the year 1888. In 1898 these laws had constitutional recognition in article 281 of the Constitution. And that article has been amended four times. (Act 300 of 1908, p. 450; Act 197 of 1910, p. 332; Act 132 of 1912, p. 164; and Act 192 of 1914, p. 370.) There has been a maze of legislation, so intricate and confusing, since 1898, in experimenting with this very difficult problem of drainage, that it is almost impossible for the constituted authorities to proceed with certainty in enacting ordinances and resolutions to conform to the laws. We have examined some 20 acts in investigating the merits of this case; and as the case was tried on its merits in the district court, and arguments heard thereon, and as the same was done in this court, and as the district judge reviewed the evidence in the case, and as counsel on both sides have orally requested that the court dispose of the case on its merits, we shall proceed with its further consideration.

Article 281 of the Constitution and the statutes carrying it into effect originally made provisions for but one system of drain-

age, the expenses of which were to be met by the imposition of ad valorem taxes; but, experience having proved that this was not an efficient or just method, the laws were amended by providing for the establishment of subdrainage districts within drainage districts, to be composed of lands of different characteristics, to be drained by different methods, and by the imposition of acreage taxes. Act 317 of 1910, p. 542; Act 219 of 1912, p. 493.

The petition of the property taxpayers for the formation of the Fifth subdrainage district in the Fourth drainage district in the parish of Jefferson was filed August 20, 1915, with the board of commissioners of the Fourth drainage district. The board of state engineers, in reporting upon the feasibility and practicability of draining and reclaiming, by means of canals and pumps, the lands in said subdrainage district No. 5, reported that the proposed district embraced pasture lands, which would cost practically nothing beyond the original cost of draining and reclaiming, marsh lands, which would cost $15 per acre to reclaim, and timbered swamp lands, which would cost about $50 per acre to reclaim, and that the said area equaled 7,900 acres. The lands were, in the report, divided into area A, containing 5,500 acres, embracing 1,900 acres of timber swamp and 3,100 acres of meadow prairie land, which would cost three-fourths of the total cost of drainage, and area B, embracing 2,400 acres, 1,600 of which are farm lands and about 800 acres of wet land, which would cost one-fourth of the total cost of drainage of the whole subdrainage district; further, that the total cost would be $204,000, or about $30.90 in one area, and $20.92 in the other area, or an average of $25.82 per acre as applied to the total number of acres involved, namely, 5,-500 acres in area A and 2,400 acres in area B.

November 21, 1916, after subdrainage district No. 5 had been organized on October 20, 1916, the board of commissioners of the Fourth Jefferson drainage district received a supplemental petition of property owners of adjacent lands, asking for an extension of subdrainage district No. 5, so as to include their lands as outlined and described, and which adjoined the 7,900 acres which were originally designed to form subdrainage district No. 5. According to an estimate furnished by the board of state engineers at the time, the additional cost of draining said additional area was estimated at $91,000, or $295,-000 for the extended subdrainage district, at a cost of $19.71 per acre as applied to the total acreage, amounting to 14,970 acres.

The commission, on their own initiative, and without the consent or notice of the landowners of the lands in the original subdrainage district No. 5, enlarged same, which action was contrary to law.

On December 12, 1916, at a special meeting of the commissioners, a resolution was presented and adopted, which embodied the original petition, presented in August, 1915, and the supplemental petition, dated November 17, 1916, and for a second time there was created the fifth subdrainage district, now containing 14,970 acres. The resolution further provided for the issuance of $295,000 of bonds and fixed a uniform acreage tax of $19.71 per acre, regardless of whether the lands were drained by gravity or by the use of levees and pumps.

This action was in violation of article 281, which provided different methods of draining high and low lands, and the placing of them in different districts. It was arbitrary and illegal, and it subjected the highlands of the district to illegal taxation. The action of the commission was the taking of some of plaintiffs' property without due process of law.

The high gravity drained lands of the district constituted about one-third of the total area, and the wet lands about two-thirds.

Such action was also contrary to the report of the engineers who are named in the law and who had been employed to survey and make a report upon the lands.

Thereupon a protest was filed by landowners, who withdrew their signatures from the petitions, which did not leave a majority in acreage of wet lands petitioning for drainage in subdrainage district No. 5. The protest was received, and apparently acquiesced in, for the resolution referred to, of December 21, 1916, was never promulgated, and the minutes of the meeting were not inscribed in the minute book, although the resolution was apparently adopted.

On December 10, 1917, almost one year later, the commissioners met and adopted another resolution, practically identical in terms with the one which had been adopted on December 21, 1916, using and embodying in said minutes and resolution the original petition filed in November, 1916, and using and relying upon the same reports from the board of state engineers and H. L. Zander, special surveyor, and which had formed the basis of the proceeding of December 21, 1916.

The majority of the property owners again protested, and this suit was filed, asking for the annulling of the proceedings of the commission of this later date, December 10, 1917.

When the drainage board met on December 10, 1917, it did not have before it a petition signed by the owners of two-thirds in acres of the high lands and by the owners of a majority in acres of the wet lands.

The signers of the petition undoubtedly had the right to withdraw their signatures before action was taken on their petition by the board of commissioners. The resolution of the board on December 21, 1916, cannot be construed as a completed act of the board. The proceedings appear to have been abandoned at that time, and it was not until December 10, 1917, that the commission really acted, as evidenced by the minutes of the

meeting of that date, and they acted on the petitions of the property owners in the proposed subdrainage district, which petitions had been withdrawn, and the commission committed the other illegal acts that they did in 1916, hereinbefore referred to.

The law is quite clear that, in creating subdrainage districts which must be leveed and pumped, they may be formed only upon the petition of landowners owning not less than a majority of acres in the area to be drained. The amendment to the Constitution with reference thereto is found in Act 192 of 1914, p. 370, which reads, in part, as follows:

"Paragraph 3. When the character of any land 'is such that it must be leveed and pumped in order to be drained and reclaimed the' board of drainage commissioners of the district in which the land is situated, shall upon the petition of landowners, whether individuals or corporations, resident or nonresident, owning not less than a majority of acres in the area to be affected, ascertain the cost per acre of draining and reclaiming said land [and] incur debt against each and every acre of land thus situated for an amount sufficient to drain and reclaim it, and to issue for such debt negotiable bonds for the total aggregate amount of the total cost of such drainage, which bonds shall run not longer than forty (40) years from their date and bear interest at a rate not exceeding five per centum per annum, payable annually or semiannully, and shall be sold for not less than ninety per centum (90%) of par; and said board of drainage commissioners shall each year as long as any bonds are outstanding levy annually upon each and every acre of land, whether public or private, situated in said drainage or subdrainage district, forced contributions or acreage taxes in an amount per acre sufficient to maintain the drainage of the said district or subdrainage district, to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required for any sinking fund for the payment of said bonds at maturity: Provided, that such forced contributions or acreage taxes for all purposes shall never exceed three dollars and fifty cents ($3.50) per acre per annum."

Act 227 of 1914, p. 424, as amended by Act No. 225 of 1916, p. 490, appears to attempt to give the right to drainage commissions to

organize subdrainage districts by simple resolution to that effect. It reads, in part, as follows:

"In all cases where drainage districts have been or will be organized by the action of police juries under the provisions of this act, and the drainage commissioners should deem it expedient, or necessary for the better drainage of the district, to divide the same into subdrainage districts, they shall have the right to do so by simple resolution to that effect, defining the limits of such subdrainage district. Such subdrainage district may be increased or diminished, and the boundaries thereof changed, by simple resolution of the board of drainage commissioners, if such action is taken prior to the authorization to issue bonds or levying of a tax in such subdrainage district based upon a vote of the property taxpayers in such subdrainage district. If, however, such subdrainage district is created for the purpose of reclaiming lands that must be leveed and pumped in order to be drained and reclaimed, then the limits of such district may be changed at any time and other lands included therein, upon the petition of at least two-thirds (⅔) of the acres represented by owners owning the additional territory to be included and a like number of petitioners of the territory already included in such subdrainage district shall not in any manner affect any bonds that may have been issued against the property situated in said subdrainage district, and the board of drainage commissioners shall have the authority to issue bonds for a like amount per acre upon the additional property embraced in the drainage district and to levy an acreage tax or forced contribution to pay the interest and principal of such bonds, together with the maintenance of the drainage district."

The action of the commission must, under article 281, as amended in 1914, be based upon the petition of landowners owning not less than a majority of the acres in the area to be affected.

The resolution of the commission declares that the drainage tax sought to be imposed upon plaintiffs' property is to be levied on all of the land in subdrainage district No. 5, which district was created for the purpose of reclaiming those lands in the district that must be levied and pumped in order to be drained and reclaimed. This cannot be done.

Reclamation taxes cannot be imposed upon highlands, which are sufficient in extent to be put into a separate drainage district.

There are other objections urged to the validity of the resolution of the board, but they are not considered in this opinion.

The judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiffs and against defendant, declaring the proceedings to create subdrainage district No. 5 in the Fourth Jefferson drainage district, and to levy drainage taxes therein, and issue drainage bonds, to be null and void; all at the cost of defendant.