(83 South. 756)

No. 21953.

J. M. BURGUIERES CO., Limited, v. PETERMAN, Sheriff, et al.

(Jan. 5, 1920. Rehearing Denied Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. DRAINS ☞70—OWNER NOT HEARD ON ISSUE OF TAXATION AND HIS PROPERTY NOT SUBJECT THERETO.

Where plaintiff landowner suing to prevent the sale of its property for drainage taxes had had no opportunity to express itself for or against the matter, and other property owners had had no chance to decide by their votes whether or not plaintiff's property should be included within the.territory which they wished to tax and for which they wished to issue bonds, plaintiff's property is not subject to taxation or to sale therefor.

2. DRAINS ☞70—RIGHT OF COMMISSIONERS TO TAX ON COMPLIANCE WITH DRAINAGE LAWS AND CONSTITUTION AS TO SUBMISSION TO TAXPAYERS.

Under Act No. 48 of 1898, creating the Iberia & St. Mary drainage district, or under reorganization of such district by the police juries of the parishes pursuant to Act No. 12 of 1900, § 14, the board of commissioners of the district had the right to tax all land within its confines as outlined in Act No. 48, or in the reorganization ordinance, on compliance with the drainage laws and constitutional provisions requiring submission of any proposition to levy a tax or to issue bonds to a vote of the property tax payers affected.

3. DRAINS ☞15 — POLICE JURIES CAN ENLARGE LIMITS OF REORGANIZED DISTRICT.

Under Act No. 12 of 1900, § 14, the police' juries of the parishes affected had power in reorganizing it to enlarge or extend the limits of the Iberia & St. Mary drainage district, formed pursuant to Act No. 48 of 1898.

4. DRAINS ☞74 — DISTRICT NOT ESTOPPED FROM ENFORCING TAX AGAINST PROPERTY BY FAILURE TO INCLUDE IT FOR A TIME.

A drainage district, by virtue of its failure for some 14 years to include part of a plantation within the area to be taxed, is not estopped to claim the right to tax the property whenever the board of commissioners chooses to follow the course required by law for imposing a tax.

5. DRAINS ☞69 — ASSESSMENT OF PART OF PLANTATION FOR MORE THAN WHOLE PLANTATION WAS ASSESSED FOR STATE PURPOSES IMPROPER.

The act of a drainage district in assessing the portion of a plantation within the district, as defined by statute and police jury ordinances, for more than the whole plantation, part of which was without the district, was assessed for state purposes, was in violation of the law as it stood at that time; Const. 1898, art. 225, requiring uniformity of taxation, etc.

Appeal from Twenty-Third District Court, Parish of St. Mary; Thomas M. Milling, Judge.

Injunction suit by the J. M. Burguieres Company, Limited, against Wilson T. Peterman, Sheriff, the Iberia & St. Mary Drainage District, and others. From a judgment perpetuating the injunction, defendants appeal. Affirmed.

Joseph A. Breaux and Porteus R. Burke, both of New Orleans, for appellants.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

DAWKINS, J.  Plaintiff seeks by injunction to prevent the sale of certain of its property for drainage taxes claimed to be due to "Iberia & St. Mary drainage district," upon the ground that the property is not within the territory over which the said district has the right to lawfully collect taxes.

Defendant drainage district first pleaded the exceptions of no cause of action and estoppel, and, these being overruled, it answered, in effect, denying the contention of the plaintiff and averring that said property was liable for the tax. It asked that the injunction be denied and for the statutory penalties.

From a judgment perpetuating the injunction the drainage commission prosecutes this appeal.

### Statement of Case.

The Legislature in 1898 passed Act No. 48, amending Act No. 51 of 1892 and creating the Iberia & St. Mary drainage district, section 2 of which (No. 48 of 1898) reads as follows:

"Be it further enacted, etc., that the said board of commissioners are hereby invested with all the rights and powers necessary to thoroughly complete the drainage of said district; that the said drainage district shall be composed of all the lands lying and being situated in the first, second and seventh wards, west and north of Bayou Cypremort in St. Mary parish, west of Bayou Teche, and all the lands in the first and eighth wards of the parish of Iberia, and have that part of the second ward of the parish of Iberia included within the lines commencing * * * at the upper line of the Olivier and Pharr plantation, following the upper line of said plantation due west 80 arpents in depth, then following the line due south, following the meanderings of Bayou Teche until it reaches the line of the first ward of Iberia parish, at a point 80 arpents in depth from said Bayou Teche so as to include all the lands lying between Bayou Teche and said line of 80 arpents west of it, and as much of said district to be reclaimed and drained as may be deemed possible by the said commissioners after a thorough survey shall have been made and to drain the same they shall have the authority to place thereon machinery and of freely passing on and of using the same and of digging all necessary canals and drains and make all necessary embankments and levees, and of doing all things which may be useful or necessary in draining the said drainage district; provided sufficient levees be made to protect the owners of lands through which the canal or canals are to pass, and said drainage district do have the use of Delahoussaye or State canal for drainage purposes."

The statute also provided for the appointment by the Governor of five commissioners to represent the district, who were constituted a body corporate. The members of this board, having been duly appointed and qualified, met on February 3, 1899, and employed engineers to survey the said district and to furnish a plan for the drainage thereof, "accurately designing the lands to be drained and the names of the proprietors," all in accordance with section 3 of said act. Some months later the engineers completed the survey and presented to the board of commissioners a map and plan of the lands to be drained, showing acreage and the names of the proprietors, which map was duly approved and signed by the members of the board and copies deposited in the offices of the assessors of Iberia and St. Mary parishes, and notice thereof was duly published as required by the statute.

The property on which the tax is now sought to be collected was within the boundaries of the district as described in the statute, but was not included among those

lands shown on the map or survey just mentioned and which the commission proposed to drain.

The act also provided that when the map, plan, and list of property owners had been filed in the clerk's offices of the two parishes and published for four weeks the board of commissioners should apply by petition to the district courts for the two parishes, and upon proof of notice by publication as above indicated said courts should—

"decree that each portion of the property situated within their limits in said district of the property to be drained and all property to be benefited by said drainage, designated on the plan made by said board of commissioners, is subject to a first mortgage, lien and privilege in favor of said board of commissioners for such an amount as may be assessed for drainage of the said lands and interest thereon at the rate of 5 per cent. per annum from demand thereof."

However, this part of the statute does not appear to have been complied with.

Section 5 of the act authorized the issuance of $30,000 of bonds to become due and payable in 30 years, "out of funds to be collected under this act."

Sections 7 and 8 provided for the raising of funds to pay the bonds as follows:

"Sec. 7. Be it further enacted, etc., that wherever one-tenth of the property tax payers owning property to be benefited by said drainage, within the said drainage district, shall petition the said board of commissioners to levy an increased rate of taxation for the purposes of draining the lands before mentioned or any portion thereof, the said board of commissioners shall order a special election for that purpose and shall submit to a vote of the property tax payers of said drainage district, whose property is to be benefited by said drainage, entitled to vote under the laws of this state, the rate of taxation and purposes for which it is intended; provided, that said election be held under the general election laws of this state, at the time in force and at the polling places in said drainage district, at which the last preceding election was held, and not sooner than twenty (20) days after the official publication of the petition and ordinance ordering the elec-

tion that shall be made in the same manner provided by law for judicial advertisements in any newspaper in the said parishes.

"Sec. 8. Be it further enacted, etc., that for the purpose of raising additional funds for said district, said board of commissioners are hereby authorized and empowered to levy an annual contribution or assessment upon lands in said district not to exceed 25 cents per acre, subject to taxation for drainage purposes; said contributions to be assessed and collected and paid into the parish treasury in the same manner and at the same time as the other drainage tax provided for in this act.

"Sec. 9. * * * That this tax can be levied only when a majority of the property tax payers within the said drainage district * * * shall have voted therefor. No property tax payer shall be permitted to vote at any election under this law unless he owns lands within the said drainage district."

On September 19, 1899, the board of commissioners met and ordered an election to be held on October 28th of the same year for the purpose of submitting to the property tax payers of the said drainage district "the proposition to vote for or against the levying of a 5-mill tax for a period not exceeding 30 years," and whether or not the commissioners should issue bonds as provided by Act No. 48 of 1898 and article 281 of the Constitution. In this resolution it was recited that more than one-third of the property tax payers in the district had submitted a petition requesting that said election be held. The tax to be levied upon "all taxable property situated within the limits of said drainage district as per maps and plans," etc., and it was accordingly directed that the election be held at the usual polling places to determine whether or not the property owners would grant to the board "authority to levy and impose a special tax of no more than 5 mills on the dollar on all taxable property for not more than 30 years, situated within the drainage district subject to taxation, and defined by the maps and plans as being affected."

The election was held and the property

owners named upon and whose property was within the confines of the territory shown upon the maps and survey alone voted. The Cypremort plantation, or the property now in question, with other lands, though within the limits of the drainage district as outlined in the statute were not shown upon the map, did not participate in the election, and were treated as not affected. The election was carried in favor of the tax and of the bonds.

Some work looking to the drainage of the district in accordance with the plan and maps above referred to was performed by the board of commissioners, but the bonds were never issued.

At its regular session in 1900 the Legislature passed Act No. 12, authorizing the police juries of the several parishes to organize drainage districts in conformity with its provisions, and section 14 of said act gave the existing drainage districts the right to apply to the police juries of their respective parishes and to be by them reorganized under the provisions of said law, in the following language, to wit:

"Sec. 14. Be it further enacted, etc., that any drainage district organized under existing laws may avail itself of the provisions of this act and reorganize under the provisions hereof by making the fact known to the police jury or juries of the parish or parishes in which such drainage districts may be located, and upon application from such drainage districts to said police jury or juries the police jury or juries shall immediately organize such districts under the provisions of this act and commissioners shall be appointed for said districts as hereinbefore provided."

The second paragraph of this section required that any district so reorganized should assume all obligations, bonds, etc., of the old, and have the power to carry out all contracts previously made.

The Iberia & St. Mary drainage district in July, 1900, applied to the police juries of Iberia and St. Mary parishes, and was reorganized under this provision of said Act No. 12 of 1900; the ordinances of reorganization describing the district as reorganized as follows:

"All lands lying and being situated in the first, second, and seventh wards west and north of Bayou Cypremort in St. Mary parish, west of Bayou Teche, and all lands in the first and eighth wards of the parish of Iberia, and being that part of the second ward of the parish of Iberia included within the lines commencing at a point on Bayou Teche at the upper limit of the Olivier and Pharr plantation, following the upper line of the said plantation due west 80 arpents in depth, then following the meanderings of Bayou Teche until it reaches the line of the first ward of Iberia parish, at a point 80 arpents in depth from Bayou Teche so as to include all lands lying between Bayou Teche and said line 80 arpents west of it."

This last description does embrace the plaintiff's property involved in this case.

On August 23, 1900, the board of commissioners of the defendant district, as reorganized by the police juries of the two parishes, ordered an election of the property tax payers within its confines as just above described, and on October 9th of the same year, at said election, the said taxpayers approved the three propositions submitted to them by the board, to wit:

"1. To incur an indebtedness of $100,000 for the purpose of constructing a system of drainage for the Iberia & St. Mary drainage district, which indebtedness is to consist of a ratification of the debt authorized by the voters on the 28th day of October, 1899, of $30,000 and an additional indebtedness of $70,000.

"2. To authorize the Iberia & St. Mary drainage district to issue $100,000 of 30 year, 5 per cent. interest-bearing, negotiable bonds of the face value of $1,000, and numbered from 1 to 100, respectively, to represent said indebtedness of $100,000, which shall consist of a ratification of the authorization granted by the taxpayers of the old district on the 28th day of October, 1899, of $30,000 of such bonds, which have never been issued, and the issuance of an additional $70,000, to be one series. Interest on the said bonds shall be paid annually. The drainage district shall retire after five years from the issuance $4,000 of the said bonds annually, to be selected by lot or chance. The drainage district to have the option after five

years to retire a greater amount than $4,000 of said bonds, but to be compelled to retire at least that amount, and to set aside each year sufficient funds for that purpose.

"3. To authorize the Iberia & St. Mary drainage district to levy a 5-mill tax on all property subject to said taxation within the said drainage district, said tax to run for a period of 30 years. This is to be a ratification of the 5-mill tax voted heretofore in favor of the old district on the 28th day of October, 1899, and an extension of the same for 30 years from the date of this levying of the first tax under this election, and this extension to affect all property subject to said taxation within the said drainage district."

The third or last proposition thus submitted to the taxpayers and ratified by them also provided the order in which the funds arising from the 5-mill tax should be applied upon the obligations of the district.

[1] The evidence in the record as to whether the property tax payers, outside the confines of the map and survey prepared and adopted by the board under Act 48 of 1898, but within the limits of the drainage district, both as defined in the said act and in the reorganization by the police juries, were allowed to vote upon the three propositions, is not altogether clear, much of the testimony which probably would have cleared up this point having been excluded by the lower court; but, in view of the fact that plaintiff's property now sought to be taxed was situated within this uncertain area, was not assessed or taxed, and several witnesses having testified that it was never so considered until 1914, we think the inference reasonably clear that it did not participate in the tax election, and that the inclusion of it within the territory to be taxed was not submitted to or voted upon by those who did actually vote upon the tax levy and bond issue. The result is that, whereas the law contemplated, and we think required, that the proposition to levy the 5-mill tax and to issue the $100,000 in bonds should be submitted to all the taxpayers, with an opportunity to all persons and property to be included therein to vote upon the questions, this particular property owner and its property has never had an opportunity to express itself for or against the matter, nor have the other property owners had a chance to decide by their votes whether or not it should be included within the territory which they wished to tax and to issue bonds thereon. This raises the old question of taxing a person or his property without allowing him to be heard in determining whether or not the tax shall be imposed. It is true that even if he and his property had participated therein, if a majority of the property owners and taxpayers had voted favorably on the proposition, he and it would have been bound thereby; still this cannot deprive him of his right to be heard.

[2] However, we think that, either under Act 48 of 1898 or under the reorganization by the police juries pursuant to section 14 of Act 12 of 1900, the board of commissions had and still have the right to tax every acre of land within the confines of the Iberia & St. Mary drainage district, as outlined in said Act 48, or in the ordinance of the police jury effecting the reorganization, upon complying with the drainage laws and the constitutional provisions requiring the submission of any proposition to levy a tax or to issue bonds to a vote of all the property tax payers to be affected thereby. In other words, neither the board of commissioners in the first case, nor the police juries in the second, could limit or abridge the right to tax any part of the property included in the district, for that right was granted by the Legislature and the Constitution to the district as a whole, subject only to the consent of a majority of the property owners and taxpayers expressed through their votes.

This not having been done, in so far as plaintiff and its property were concerned, up to date of the placing of it upon the tax rolls

in 1914, in neither case were they bound thereby. It was upon this principle of the necessity for the consent of the taxpayer, or a majority of those and the property to be affected, although the facts and circumstances were different, that the decision in Bank of Orleans v. Fourth Jefferson Drainage District, 145 La. 641, 82 South. 732, was based.

[3] It is argued by the plaintiff that the police juries, under Act 12 of 1900, giving them the right " * * * to divide their parishes into drainage districts and to fix the limits thereof," etc., and also permitting existing districts to apply to and be reorganized by the police juries having jurisdiction, did not have the power to enlarge or extend the limits of any district so reorganized. We cannot see how this construction can prevail when section 2 of the act gives the police jury the " * * * power to fix the limits of the said districts," and in view of the provisions of section 14, quoted hereinabove. The right to organize and fix the limits of drainage districts granted to the police juries is clearly separated, both in the statutes and in the Constitution from the power to tax; the latter being in all cases dependent upon the vote of the people. It would little concern the individual taxpayer and his property what the limits of the drainage district might be, so long as no new burdens were imposed upon him thereby, and this was doubtless the reason for vesting in the police juries the power to define the limits of such districts. Sections 7, 8, and 9, Act No. 12 of 1900, require that a proposition to levy a 5-mill tax, to issue bonds, or to impose an acreage tax should first be authorized by a vote of the property tax payers to be affected. In any event, the question of whether or not police juries had the power to extend the limits of a district cannot affect the plaintiff's rights, for, undoubtedly, the property now sought to be taxed was within the confines of the drainage district, both as de-

146 La.—15

termined in Act 48 of 1898 and in the ordinance of reorganization of 1900, in which the descriptions appear to have been the same.

[4] Plaintiff further contends that the defendant drainage district, by virtue of its failure to include that part of Cypremort plantation within the area to' be taxed for some 14 years, and other matters complained of, is estopped to now claim the right to tax the property in question. However, we think there will be no basis in law for this contention whenever the board chooses to follow the course required by law for imposing the tax. 1 Dillon on Mun. Corp. (4th Ed.) p. 528; Byrne v. Parish of East Carroll, 45 La. Ann. 392, 12 South. 521; Reynolds & Henry Const. Co. v. City of Monroe, 45 La. Ann. 1024, 13 South. 400.

[5] Plaintiff also complains in the alternative that the drainage district has assessed that portion of the Cypremort plantation which is within the district, as defined by the statute and ordinance, or $90,000, which was more than the whole (a portion being without the district) plantation was assessed for ($87,-000) for state purposes. This action on the part of the defendant was undoubtedly contrary to the law as it stood at that time. Article 225, Const. of 1898.

For the reasons assigned, judgment appealed from is affirmed, at the cost of the appellant.